John W. Hays, administrator, etc., plaintiff in error, *vs.* Isaac B. McFarlan, defendant in error.

A note. given by the reputed father of a bastard child to the mother, to do something for her and to prevent her from instituting a proceeding of bastardy against him under the statute, is founded on a good consideration, and is valid and recoverable.

Assumpsit, in Harris Superior Court. Tried before Judge Worrill, at October Term, 1860.

This was an action brought by John W. Hays, administrator of Martha Ann McKee, deceased, against Isaac B. McFarlan, to recover the amount of two promissory notes,

dated the 30th of August, 1857, due the 25th of December thereafter, signed by the defendant, and payable to the plaintiff's intestate, for $500 00 each.

To this action the defendant pleaded: That the intestate of plaintiff, in her life time, was pregnant with a bastard child by somebody, and that the plaintiff and one Samuel Amos, the brother of the said Mrs. McKee, charged defendant with being the father of said bastard child, and threatened to expose him, and have the child sworn to him, if he did not do something; that under the influence of these threats, and to prevent the report of his being the father of the child reaching his family and friends, the defendant gave the notes sued on, and for no other consideration, and that the notes were without consideration and void. The defendant also pleaded: That said notes were given to keep Mrs. McKee from swearing the child to the defendant, and are therefore void; also, that the notes were given for the support of the said bastard child, which was not born alive, or if born alive, it lived but a few days, and that the consideration has failed.

The evidence on the trial disclosed the facts: That Mrs. Martha Ann McKee was a widow, residing in the county of Harris; that she became pregnant with a bastard child; that her brother and friends, on ascertaining that she was in that condition, and that the defendant was the reputed father of the child, went to him and told him, that if he did not do something for her, she should swear the child to him. McFarlan told them to hold on, and say nothing about it, and meet him at a certain house in the neighborhood, and he would give his notes for $1,000 00; that they did meet, and defendant gave the notes for the support of the child. Another witness states, that the notes were given to keep Mrs. McKee from swearing the child, and that they were given for the benefit of the child, the woman, and her children; that the notes were delivered to Mrs. McKee, who left them with her brother for collection; that Mrs. McKee then left Georgia, with some relatives, for the State of Louisiana; that on the way she was delivered of the child, which died

in a few hours after its birth; that some time in the month of October, thereafter, Mrs. McKee herself died; that the plaintiff took out letters of administration upon her estate and instituted suit on the notes.

Upon this state of facts the presiding Judge charged the jury:

"That if the notes sued on were given by McFarlan, for the purpose of keeping Mrs. McKee, from swearing the child to him, and that this was the consideration of the notes, then the notes were illegal and void, and they must find for the defendant."

The jury found for the defendant, and counsel for the plaintiff moved for a new trial of the case on the grounds, amongst others:

That the said charge of the Court was erroneous, and that the verdict of the jury was contrary to law and evidence.

The presiding Judge refused the new trial, and that refusal is the error of which complaint is made.

JOHNSON & SLOAN, for plaintiff in error.

INGRAM & RUSSELL, for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

The objections to this judgment are to the admissibility of the evidence, the charge of the Court, and the verdict of the jury, and all of them may be resolved into one, that is, whether the consideration of the note, the subject matter of the suit, is good and sufficient in law? Mrs. McKee, the plaintiff's intestate, was pregnant with a bastard child, of which the defendant was the reputed father, and her friends applied to him to know what he would do for her, and that he must do something before she left for the State of Louisiana, or she would swear the child to him; in other words, that she would institute a proceeding against him in bastardy to compel his support of the child, etc. To avoid this public exposition, the defendant being a married man, and to do something for the mother, he gave this note. That is the consideration.

Was it sufficient to support the promise? It is urged by the defendant that it is not, because, as they assert, the note was given to suppress a public prosecution for the offence of bastardy, and that it is void, being against public policy, that is, that it is the policy of the public, by a prosecution and public exposure of these offenders against law, to make an example of them to deter others from like vice and immorality. If the Bastardy Act had this intention, or that was the policy of this law under which the prosecution in this case was threatened, there would be great reason in the position of counsel, but such is not the intention or policy of the Act, or the purpose for a prosecution under it. The sole object of the Act is to compel a support and education of the bastard child by its reputed father, and also " the expenses of lying-in with such child, boarding, maintenance and nursing, while the mother of such child is confined by reason thereof." The law does not compel or require the mother to make the prosecution, or any one else; but the mother may voluntarily give the bond herself for these expenses, and the maintenance and education of the child, or if she is able to do so herself, and there is no probability of the child becoming a charge on the county, there is no necessity for such bond, nor will it in that case be required. The whole object of a prosecution and of the Act, so far as the putative father is concerned, is to compel him to do what it is his natural and legal duty to do, that is, to support, educate, and maintain the child, and to pay the expenses attendant on the mother's confinement. The public law, which these parties *were* guilty of violating, was that of fornication and adulteration, and for this there was no prosecution begun or threatened. The note was given to enable the mother to do that which he otherwise would have been compelled to do, and was therefore given upon a sufficient and valid consideration. That the defendant was induced to give the note from fear of exposure, from the shame and infamy that might have attached to him in consequence, or from a fear of its. effects upon his domestic peace and happiness, as well as a sense of justice, to render some compensation for the deep and forever abiding injury that he had

inflicted upon the mother, does not lessen the merit of the note, or its validity, but greatly increases it.

It is unnecessary to prolong a discussion of this question as it is no longer an open one, having been practically decided in this Court, Hargrove vs. Foreman, 12 Ga., 342, in which this Court says; "Such a contract is not against good policy or good morals, nor against law, but in conformity with its express provisions, and in the judgment of this Court ought to be enforced. If the defendant's testator, by this arrangement, relieved himself of all statutory liability in which he was in iminent danger, for the child had already been sworn to him, the paternity of which he never disputed, *if he was by this means acquitted from a public prosecution, exposure and disgrace*, to say nothing of the trouble, loss of time, and pecuniary expense, necessarily incidental to such a proceeding, who shall say that these considerations were not amply sufficient to bind him for the amount which he himself, in view, no doubt, of all these things, as well of his natural obligation to provide for his offspring, freely and understandingly elected to pay?

"The fine imposed by the Code, [Act,] for bastardy, it is true, is only $700 00, *but when the reputed father prefers to avoid a public arraignment* and trial, and adjust the matter with the mother himself, Courts will not undertake to measure the consideration, nor to circumscribe by any definite or prescribed bounds." It was again decided in Davis vs. Moody and wife, 15 Ga. 181. The same doctrine is maintained and enforced by the Supreme Court of Alabama, under a Bastardy very similar to ours. Robinson vs. Crenshaw, 2 Stew. & Por., 278. See also 9 Por., 549. It will not do for the defendant to say, now, that there is no proof that he is the father of the child, for when he was called upon by the mother, brother and friend, to do something for the mother, he never denied that he was the father, and his giving the note is an admission by himself that he was the father of the child.

Let the judgment be reversed.