## 63326. WORTHINGTON v. WORTHINGTON.

Decided June 24, 1982 —
Rehearing denied July 6, 1982 —

*J. Corbett Peek, Jr., James Garland Peek,* for appellant.
*Thomas Henry Nickerson,* for appellee.

Deen, Presiding Judge.

1. The exact question at issue here seems not to have been decided in Georgia. It may be phrased thus: Where in connection with the birth of an illegitimate infant the mother and putative father enter into a settlement agreement for all claims between them, including child support, *and such contract is fully executed by the alleged father,* may a subsequent action be brought by either the minor or his mother for the purpose of obtaining additional benefits?

We are satisfied that so far as the mother suing in an individual capacity is concerned such an action will not lie unless the contract is proved invalid for some other reason. *Warner v. Burke,* 137 Ga. App. 185 (1) (223 SE2d 234) (1976) bears a close resemblance to the situation here. Although the defendant denied paternity, the alleged parents entered into an agreement by which he agreed to make weekly support payments for the benefit of the child until it reached 18 years of age. At a later period the mother sought to have the amount of weekly payments increased. The holding is in substance that settlements of bastardy proceedings are encouraged, that an

agreement to support is valid, even though oral and even though parentage by the father is not admitted, and that the court has no power at a later date to modify the contract by increasing the amount to be paid for support, the only remedy being breach of contract. The contract in that case was executed in 1971 prior to Code § 74-202 (Ga. L. 1972, pp. 494, 495) placing on the father the duty of maintaining the child until the age of 18, and specifying that this duty "shall be a good consideration to support a contract by him." That code section was amended by Ga. L. 1979, pp. 466, 494, placing the burden equally on both parents. It is noted also that in 1973 Code § 74-9902 was amended to provide that the parents of such a child may enter into agreements which, however, are not binding until approved by the court. This provision was held in *Thorpe v. Collins,* 245 Ga. 77, 80, fn. 3 (263 SE2d 115) (1980) to apply only in bastardy proceedings. From the general tenor of the case we assume that voluntary settlement agreements such as that in *Warner* and other cases cited in *Thorpe* which involve a settlement agreement executed prior to 1979 are valid even though not submitted to judicial scrutiny. We therefore hold that unless the plaintiff mother succeeds in having this settlement agreement held invalid for some other reason, full execution of it by the defendant by payment of the lump sum settlement bars any further claims which she may have against him.

2. The claim of the minor William Bryan is tailored to fit Code Chap. 74-3 as enacted by Ga. L. 1980, p. 1374, effective July 1 of that year. This provides in substance that a child, among others, may bring a civil action to establish paternity, and that if paternity is established the final decree will include provisions concerning the duty to support by periodic or lump sum payments. See Code § 74-311. The minor plaintiff has complied with Code Chap. 74-3 in the amended complaint. However, Code § 74-310 (a) provides: "On a finding that the alleged father is the father of the child, the court shall issue an order designating the alleged father as the father of the child. The sole effect of such order shall be to establish the duty of the father to support the child." It can be argued that if this is the sole purpose of the establishment of paternity it does not matter whether the putative father has admitted paternity or not except for purposes of support, and if the support obligation has been discharged by the execution of a prior settlement agreement between the alleged parents there is no basis on which the action may proceed in the name of the child. The appellant further strenuously contends that nothing in the 1980 amendment even suggests that it have retrospective operation and therefore the 1980 Act can have no bearing on the provisions of the general release executed between the putative parents; that even if it did this would impair the obligation of

contracts and disturb vested rights, for which reason it cannot be given effect here. *Boston v. Cummins,* 16 Ga. 102 (1854); *Biddle v. Moore,* 87 Ga. App. 524 (74 SE 2d 552) (1953). As this would normally be true, the question must be considered from the standpoint of the rights of the minor, who is not a party to the agreement.

Code § 74-105 as it existed in 1974 provided: "Until majority, it is the duty of the father to provide for the maintenance, protection and education of his legitimate child." Ga. L. 1979, pp. 466, 492, enlarged this to include both parents except as otherwise defined by court order. Code § 74-202 which required the father to support an illegitimate child, with proviso that he "may voluntarily discharge this duty; if he shall fail or refuse to do it, the law will compel him" was by the same Act (Ga. L. 1979, pp. 466, 494) rewritten in the same language, with respect to illegitimates, as Code § 74-105 regarding legitimates. We therefore assume that the intent of both statutes was the same. The issue as to legitimate children was decided in *Williamson v. State,* 138 Ga. App. 306 (226 SE2d 102) (1976) where it was held that the father who at that time (1974) was solely responsible for the support and maintenance of his legitimate children, could defend against failure to support in an abandonment action because of a voluntary settlement agreement entered into between himself and his wife in a divorce proceeding in which she assumed sole responsibility for the support of the offspring. This court held: "Code § 74-105 makes it the duty of the father to provide for the maintenance, protection and education of his child. Neither the wife nor the civil courts can take away this right that inheres expressly in the children. Specifically, the wife can not contract away the right of the children to be supported by their father."

Other states have applied the same yardstick as to both legitimate and illegitimate children. In Gammon v. Cobb, (Fla.) 335 S2d 261, 266 (9), it is stated: "An illegitimate child's right to support cannot be contracted away by its mother. A release executed by her is invalid to the extent that it purports to affect the rights of the child. [Citations omitted.] The mother is merely the trustee to receive the funds and simply convert them into relief for the children. The obligation of support is for the benefit of the child. Being only a conduit, she has no right to control benefits due and owing to the child by its natural father. . ."

We are of the opinion that the public policy of this state will not remove the right of a minor which the law otherwise bestows upon him to establish his paternity in a court of law, and, on his being successful in the attempt, be entitled to a decree of support until he reaches the age of 18. A prior settlement agreement between the parents to which he is not a party and which has not been approved by

a court of competent jurisdiction will not defeat the action, although it may be considered by the court in determining the respective obligations of the parents.

3. Insofar as William Bryan's complaint seeks punitive damages for failure to support, the motion for summary judgment should have been granted. We know of no statutory or common law right to punitive damages in these circumstances.

*Judgment affirmed in part as set out in Division 2 of this opinion and reversed as to Divisions 1 and 3. Sognier, J., concurs. Pope, J., concurs specially as to Division 1.*

POPE, Judge, concurring specially.

As noted in Division 1 of this opinion, Code Ann. § 74-9902 (e) was in effect at the time the subject settlement was consummated by the parties. The $10,000.00 settlement contained therein would provide an average monthly support of only $45.37 until the child reached majority. In my opinion, Code Ann. § 74-9902 (e) was enacted to prevent such patently inadequate support by mandating that *all* such agreements must receive court approval in order to be binding on the parties. See *Burdeshaw v. McClain,* 150 Ga. App. 108 (3) (257 SE2d 24) (1979). However, our Supreme Court has construed this proviso of Code Ann. § 74-9902 as applying only in abandonment proceedings, *Thorpe v. Collins,* 245 Ga. 77, 80 n. 3 (263 SE2d 115) (1980), and this court must abide by such construction. Since the case at bar is not an abandonment proceeding, the subject agreement did not need prior court approval in order to bind the parties thereto, appellant alleged father and appellee mother.